Welcome to the Fourth Circuit, and we're glad to have argument in our first case, Lavis v. Reverse Mortgage. Mr. Manning, we'll hear from you first. Thank you. May it please the Court, my name is Jason Manning on behalf of the appellant Reverse Mortgage Solutions. This case involves the rescission of the appellee, Ms. Lavis's, reverse mortgage loan under the Truth in Lending Act, and whether she was required to tender the proceeds of the loan she received, to be permitted to retain the property free and clear of any interest, or the ability of my client, the appellant, RMS, to recover the property. In other words, the appellee asked this Court to let her keep the money that she borrowed, the $57,000, and the property free and clear of any lien. The District Court's legal errors on appeal here arise from a misinterpretation of the U.S. Supreme Court's decision in Jesenowski, the 2015 case. More specifically, the District Court's interpretation is contrary to the plain language of the Truth in Lending Act, Section 1635B, and the rulings of this Court, and the rulings of four other Court of Appeals, specifically the Third, Sixth, Tenth, and Eleventh. The body of law here dictates, first, that tender is required to effectuate rescission of a loan contract, and second, that it is the borrower who is seeking rescission who must file suit and plead in ability and intention to tender. There is no requirement for the lien holder, or lender in this case, to file suit. A brief . . . Counsel, did I read it correctly in the record that the District Court ruled, by my count, four times prior to the final ruling that tender was required? Yes, Your Honor. I believe it . . . by my count, it was four before, and then, again, once after trial. So, a total of five times that tender was required. Counsel, what . . . just for the sake of discussion, assume we agree with you that the failure to respond within twenty days doesn't eliminate the tender requirement. B does say that before tender occurs, the creditor must comply with its obligations. So, how does all that work? I mean, to my knowledge, at least, your client hasn't complied with its obligations, including releasing of the security interest. So, how do these things kind of work out? If, you know, if the borrower, for example, is able to show that she could tender, how do we go from here mechanically, if we were to agree with you? I understand, Your Honor. So, the statute allows for the court to change the order of the procedures, and even if it declines to change the order, there . . . it cannot obviate the need to actually receive and require the tender of the loan proceeds. So, in other words, in this case, there was a notice, not a lawsuit. It did not say anything about rescission. It did not say anything about ability to tender. The case law, and this is from several other courts of appeals, says that the way it works is you have . . . typically, it's a pleading requirement, frankly. They have to actually say, we're going to tender. But if they don't, then the court can say, for example, we are going to require tender before we rescind or release the lien. But in this case, what the court . . . she declined, the district court declined to switch that order. That's okay, as long as you deem it ineffective without tender of the loan proceeds. So, in other words, the court has the discretion to do it one way or the other, but cannot get around the requirement that's well established to require the actual rescission to be effectuated upon receipt of the loan proceeds. So if . . . taking that a little bit further, I mean, the jury . . . jury's verdict was in your client's favor. Yes. But the district court excluded any evidence related to tender. Correct. So, I suppose you're arguing that she maybe can't or won't, but we don't really know that for sure from the record. So, is it . . . would . . . under your theory, would Lavis be entitled to show the potential ability to tender? No, Your Honor. I would disagree that the record does show her inability to tender. Well, where is . . . how is that? Specifically, it was stipulated that as of May 31st, 2018, RMS had advanced on her behalf taxes in the amount of $493 and insurance premiums in the amount of $3,000 and change for a total of over $3,500. And then, after that, there was a repayment plan, which was . . . A repayment plan? Yes, so that she could get caught up on those past due taxes and insurance. That was entered into in April 2015, and it required $56 per month. And Ms. Lavis defaulted on that after making one payment. That was part of the record. We were prevented from arguing anything about whether she could tender the $57,000, but the record is clear that she couldn't afford to pay $56 a month. Okay. Is this in the record? Since all this litigation has proceeded, you know, taxes and insurance have continued to accrue. Has your client been paying that, or is that . . . That's correct, Your Honor. I don't believe it's part of the record past the actual conclusion of the trial, but to this day, my client . . . Is Ms. Lavis still occupying the property? As far as we know. So let's just assume for purposes of argument that we agree with you and we vacate the district court's opinion. The case is remanded. In your view, what happens then? Because of the evidence that is part of the record, the court is required under Jesenowski and the Truth in Lending Act and innumerable other cases to enter judgment and reinstate the jury verdict in favor of RMS. So would there be further proceedings required to establish the tender amount, particularly if there are amounts due from whenever the plaintiff stopped paying through to whenever the matter is consummated? Wouldn't there have to be some additional fact-finding in that regard? I believe that to establish the tender amount as of today, we would need to provide the borrower or her counsel what the advanced tax and insurance through today were. But it's a moot point because she couldn't afford the $56 a month prior to the trial. There was no offer, no intent . . . So you say her failure to pay $56 a month suggests an inability to pay. Why wouldn't we just as likely assume from that that she just chooses not to? She gets free money from you. She's been getting free money from you for a long time. Why wouldn't she just keep getting free money? She might have all the money in the world, but why pay $56 a month if you don't have to? Just as a matter of evidence, I'm not sure why her failure to pay we should assume inability as opposed to just a choice to keep getting free money from you. Well, first I would say during the trial she testified that she couldn't afford the $56 as opposed to didn't want to. But second, I think the bigger issue is it's inequitable. I mean, I believe that's what your Honor is getting at. Why pay something if I don't have to? I understand the logic behind that, but the law precludes her from doing that. She says not. She says that her theory of the case is you didn't do your obligation, and so you're complying with your obligations as a condition precedent to her obligation to tender. So, I mean, you all disagree on the effect of the law. But under her theory of the law, you know, it's a windfall and a forfeiture effectively for you. So, I mean, I think both these, the questions kind of get to, and I think in your brief you say you'd like it reversed, but, you know, alternatively we should condition, you know, some sort of remand or condition your, you know, requirement to terminate your security interest on some tendering or establishing that, the inability to tender. And it seems like that alternative you asked for gets to the questions that Judge Agee and Judge Richard are talking to, that we need something to kind of tie things up under your theory of the case, it seems. And I understand your point on that, but I believe the record is established enough on its face to be able to show that, I mean, she never said, I intend to pay. I have the ability to pay. Those are her affirmative pleading obligations. As this Court has indicated, I mean, she has the requirement. Now, do you have, just so that I will find it easier, do you know where she testified that she lacked the ability to pay the $56 a month? Not off the top. That's fine. But I will look for it. No, no, that's totally fine. I've got somebody that can find it. Okay. So, to that point, Your Honor, this Court has affirmed rulings of lower courts that dismiss claims due to the failure to plead the ability to tender. I mean, this should have never gotten this far, is our position. And that was the Suggs v. M&T Bank case in the Eastern District of Virginia. Can I ask a slightly different question, maybe the same question, frankly. So, the statute provides that the obligor shall tender the property only upon the performance of the creditor's obligations, right? And the creditor's obligations requires maybe two things, right? One is the termination of the security interest, right? This is what we've been talking about. And you indicate, well, yeah, the Court can reverse that order based on subsection B. I understand that argument. But why doesn't it also, the creditor's obligation is that they do so within 20 days? So, in other words, the time limitation is part of the obligation that you have. And so, once you haven't terminated the security interest within 20 days, the game's over. You've lost. Why wouldn't we read it that way as saying you can no longer perform your obligations because you didn't do the termination within 20 days? Why don't I read the statute that way? So, first response is because it's unjust enrichment and it's inequitable. Okay, but what I do is I read statutes, right? And like if Congress decides to unjustly enrich somebody, right, we might say they do that a lot. We might say they don't do it enough. I don't have a view on that issue, right? My question is why don't I read the statute that way? And that's where I'm going next because we're interpreting the statute in light of the law. And what is the goal of the Truth in Lending Act? But do you have any, so, other than like unjust and the goals and the purpose, do you have any reading of the statute itself that you want me to think about? Yes. So, I would point your honor to three other court of appeals cases that discuss this. So, there's no requirement to take action within 20 days or waive the right to contest rescission. And the first case is Segrist v. Bank of New York-Millan. That's the Sixth Circuit, 744 Fed Apps 932. Are any of these in your brief? Yes. Okay. Nothing in the quote, nothing in the language or logic of 1635B requires a lender to file an immediate lawsuit to avoid waiving all defenses. That was the Sixth Circuit. Are there any that are published? Maybe let's start with that question. Are they all unpublished? Yes. The next one is Pohl v. U.S. Bank. This is the Tenth Circuit, 859 F. 3, 1226, 2017. Rejecting the argument that notice of rescission becomes incontestable if a creditor fails to bring a lawsuit challenging it. Third, Barrel v. Why is that? That doesn't address my point. Anyway, I'll look at it. Give me the last one. The logic behind that one, your honor, just to unpack it briefly, is there the argument was the same. It's incontestable. You didn't do something within 20 days. And the court ruled, no, you have a duty as the borrower claimant to file a lawsuit, not the lien holder to do something else. The counsel, I mean, there are cases on both sides of the issue. I mean, there's a Ninth Circuit case that supports lavish. I think Judge Rich was saying, yeah, we get the equitable arguments. We get those things. But we're in the statute. And what I thought you were going to say is the last sentence of 1635B, which if the 20-day obligation was a showstopper, what's the point of the last sentence that lets the court do other things? Or I thought you might look at the civil liability section of the Truth in Lending Act, which steps forth a whole bunch of relief and never says that the one form of relief is that the creditor forfeits any amount borrowed. Those are statutes. Those are part of the statutes as opposed to equitable arguments, aren't they? They are. And I was just highlighting how other courts have looked at it. But to your point, the conclusion in the Truth in Lending Act itself says that ownership of the property doesn't vest in a borrower until a tender offer is made. And that's straight from the Truth in Lending Act. Where is that provision? It's in 1635B. And I could find the actual. That's all I could see. All right, counsel, thank you very much. You're a little over time, so we'll come back to you in rebuttal. I have a question for both counsel. So, if you'll be prepared to answer this when you get back up. So, Ms. Brown, we'll hear from you. And the question that I have regards the bankruptcy court's ruling. As I understand it, both parties agree that where the district court overturned the jury's verdict on Lavis' claim for failure to auto-rescission, that that is moot. Yes, Your Honor. Does the bankruptcy court's order affect any of the other issues in this case, in your view? Yes. Good morning, Your Honor. Ms. Lavis had raised or challenged standing for RMS to obtain affirmative or monetary relief from Ms. Lavis. And we continue to maintain that that is inappropriate following the bankruptcy, that RMS does not have appropriate standing under Article III to pursue affirmative relief from Ms. Lavis. All right. Go ahead. Good morning, and may it please the Court. My name is Sarah Brown, and I represent Teresa Lavis, appellee and plaintiff below. The Truth in Lending Act is a powerful statute designed to benefit consumers. And statutory rescission under the Truth in Lending Act differs from the common law and is expressly more powerful. There is a straightforward statutory regime, as Justice Scalia called it in Jesenowski, that sets out in detail the process to obtain statutory rescission. And it does not, as the Supreme Court in Jesenowski clearly ruled, require tender. Well, that was a statute of limitations case. It was, Your Honor. So how do you get to tender? The Supreme Court in Jesenowski found in order to answer that statute of limitations question that the rescission is effective upon the notice that the borrower is exercising his or her right to rescind. It's true at one point that that's what the Court says. No doubt the rescission is effective when the borrower notifies the creditor. But then on the next page, twice, it says written notice to a lender in order to exercise his right to rescind. And in the next paragraph, the borrower must do in order to exercise his right to rescind. So isn't there a difference between exercising the right to rescind and effecting rescission? Your Honor, there are, yes, there are steps that remain under the statute in order to complete the rescission, including release of the lien of the deed of trust, release of that security instrument. However, the statute itself provides as a matter of law that once that notice is issued by operation of law, that security interest becomes void. So your view is that the, tell me if I'm reading this incorrectly, that within 20 days, the creditor is required to bring some sort of action if it wishes to contest the notice of rescission? Yes, Your Honor, or it may choose to begin the process of releasing its security interest. Is that, you know, that's a pretty significant sea change in lending. And I would think in that circumstance that there would be some significant legislative history to that effect. But I don't see that either side has cited it, nor am I aware of it in any other case that's considered these issues. It just strikes me as odd that Congress would make such an enormous change without some discussion of it. There is finding of the congressional purpose in the Truth in Lending Act, as well as the statute that we've already looked at, the procedures prescribed may— What does it say about requiring the lender to act within the 20 days, or losing their security interest? I'm not aware of specific congressional testimony, but I do have judicial findings that it is the powerful purpose of that statutory rescission to ensure that lenders provide the required material disclosures. As the district court noted in this case, RMS would not have been in the position of facing a rescission notice had it provided the proper material disclosures at the time the borrower entered the transaction. That is the purpose. For sure. And I don't think there is a big contest, if any, that the notice of the right to rescind, I think, which is the issue here, wasn't given at the time of the closing. That's correct. But just following up, I mean, it's a remarkable remedy if, in response to an admitted failure, which is important, a security interest, which could be tens of thousands or hundreds of thousands of dollars, just vanishes. And where in the—I mean, I get the reading of 16th 35b that says, you know, within 20 days the creditor must act, and the part that says the tender, you know, takes place after the creditor fulfills its obligations. But I didn't see anything in the statute that articulated the relief that your interpretation of that would provide. Did I miss it? I think the closest, Your Honor, is in subsection G of 1635, which talks about the additional relief if a court finds that a creditor, like RMS, violated this section by failing to honor the notice of rescission. In addition to rescission, the court may award relief under section 1640, which would be the violations for failure to honor the notice of rescission. So right in the statute, it's contemplated— But you've already agreed that's out. Affirmative relief, yes, Your Honor. That the court may, as it did here, award— So how does that affirmative relief affect the rescission decision? Your Honor, it may not. The court first looks at the statute. RMS is not entitled to statutory rescission by failing to act within 20 days to either release its interest or invoke judicial procedures to make alternative arrangements for rescission, release of the deed of trust, and tender. The court retains in equity its ability to craft an appropriate remedy, which could include requiring tender, or there could be another basis for a creditor to receive tender. In this case, RMS did nothing. It did not act within 20 days to release its security interest. Can you go back again? I'm sorry. I'm trying to follow because I think what you said is I'm not totally sure. Judge Quattlebaum asked you the question of what indication is there that the 20-day requirement, if not met, would terminate their interest? And you pointed us to G. And so your take is that that authority isn't mandated by the statute but instead comes from G and the equitable authority of the court. I apologize. I may have misunderstood the question. Section B itself expressly in the first sentence states that by issuing notice, the borrower issuing notice of her intent to rescind, by operation of law, the security interest becomes void. The Supreme Court is clear about that. The statute is clear about that. If the creditor, in response to receiving that notice, takes certain steps, they may then receive tender. Tender is a condition precedent upon the creditor within 20 days, either invoking the judicial procedure. And in this case, RMS may have said, look, it's been three years and she can't pay her taxes. We got this notice. No way is she going to tender. If I go to the courthouse and release, I better file an action that says I'm not going to release until I get bank statements, until she provides a proffer of evidence to the court. RMS has available options to it to receive tender. So you're, I'm understanding your answer correctly. You're saying within the same statutory provision, the security interest is voided, but somehow the creditor, if they act within 20 days, can undo the voiding? No, Your Honor. They may preserve their right to tender by acting within 20 days to receive the loan proceeds in exchange for it releasing. The statute doesn't seem to say that exactly the way you word it, though, does it? The statute provides a clear process and it flows one step to the next. So it clearly provides that the security interest is void upon issuance of the right that the borrower is exercising rescission. Within 20 days, the creditor shall return and shall take steps to reflect the termination of security interest. And then upon the performance of the creditor's obligation, the obligor shall tender the property. You don't get the next step and the next step until you've satisfied the condition's precedent. So how would you distinguish two prior decisions of ours, Gilbert v. Residential Funding and American Mortgage Network v. Sheldon? Because in Gilbert, we said to complete rescission and void the contract, either the creditor must acknowledge that the right of rescission is available and the parties unwind amongst themselves, or the borrower must file a lawsuit so that the court may enforce the right to rescind. And similarly in Sheldon, we said that where the borrower intends to rescind the contract but is unable to tender the proceeds, the remedy of unconditional rescission is inappropriate. Your Honor, both the Sheldon case and the Gilbert case are distinguishable. To the extent that this court would strictly read the requirement that under the Sheldon case, this court found unilateral notification does not automatically void, I believe that to be in conflict with the Supreme Court's clear ruling in Jesenowski. However, in Sheldon, we know that You're relying on that one phrase from Jesenowski. as well as the statutory language, Your Honor, yes. Additionally, in the Sheldon case, the creditor acknowledged receipt of the notice of rescission within 20 days and filed suit itself to modify the procedures. Factually, very distinguishable from RMS's total failure in this case to respond within 20 days or invoke the court's jurisdiction to modify the proceedings. Well, obviously, we're all a little confused by the language in Jesenowski, but I have difficulty making the two different phrases in Jesenowski come together. The first one that you rely on, but then twice at the end of the opinion, as I noted earlier, the court talks about effecting the right to rescind, and those two phrases seem to be in conflict. I read Jesenowski, Your Honor, as saying that there are steps that may change depending on the creditor's response to the borrower's notice that she's exercising her right to rescind. If a creditor responds by invoking court's jurisdiction to say, in some of the cases cited, the Truth in Lending Act doesn't apply. The creditor comes back and says, either it's been more than three years, we have proof of providing disclosures, and therefore this period's limited to three days, or some other justification as to why the Loan Truth in Lending Act, which in Jesenowski is leaving open the possibility that a creditor may receive this notice and challenge the rescission, and therefore invoke the court's jurisdiction, or otherwise challenge that this was a case where rescission could apply. In this case, the record is clear, and the parties have stipulated, it's in the record at page 2386, the party stipulations, that this loan is subject to the Truth in Lending Act, that the borrower with her proper disclosures, and that her notice exercising her right to rescind was timely received within three years. And again, there's no dispute that RMS received that notice. Therefore, following the clear language of the statute and the Supreme Court's opinion in Jesenowski, RMS did not get to the tender stage, and there's nothing in the court's statute. There's nothing in Jesenowski that says you've got to file within 20 days if you're the creditor. That just wasn't before the court. I agree, Your Honor, but there is language in Jesenowski discussing potential remedies, and I'm looking at page 263 in the Jesenowski opinion, looking at that section 1635G for a remedy. Section 1635G makes clear that a court may not only award rescission and thereby relieve the borrower of his financial obligation to the lender, but may also grant the remedies afforded under 1640. So Jesenowski did contemplate what may flow from its finding that that rescission is complete upon the issuance of the notice from the borrower. All right. So can I ask, obviously, a hypothetical, and I mean it to be hypothetical, so don't tell me to sit in this case, right? So if I've got a creditor, and a notice is filed, and it's a good notice, everything fits and does whatever, they get it, and on day 25, they take the actions that they're required to take in order to terminate the security interest. And then at that point, the borrower says, you didn't do it within 20 days, and so I'm not giving you anything, I'm not doing anything. Is that correct? Is it a matter of law? Are we finished then? No, Your Honor. Okay. Tell me why not. The court still has the ability in equity to fashion a remedy. That's in G. You're sort of looking to G for that idea. Yes, Your Honor. And in this case, the district court may have chosen to award tender. She, throughout the case, said she would look at the issue of tender. She did not use it, the issue of tender, as a part of the affirmative case-in-chief to establish whether Ms. Lavis had successfully exercised notice, exercised her right to rescind, but always intended to look at whether, what would be the appropriate remedy, and would she be required to tender. There are, in the Shelton case, the court, this court, found that the borrower was acting not in good faith, had always set forth that he was never going to tender. The evidence from Ms. Lavis in this case, which is in the record at page 1110, demonstrates that she intended to tender, and she talked about going to refinance, to obtain financing from United Bank, where she had banked before in Beckley, West Virginia, to provide this amount. It's in fact RMS's conduct, its failure to follow the statute, that prevented her from being able to tender. Had RMS released its security interest, Ms. Lavis would have been to put her property up as collateral for a refinancing in order to tender. It's RMS's own conduct that prevented her from being able to do so. Help me understand that. That's, that just doesn't seem to comport with how lenders operate. I mean, folks go to the bank every day with a lien on their property, and if they want to refinance, or they want to obtain some other equity loan, they just produce a letter from that existing creditor that they're going to release the lien upon tender of proceeds. I mean, that just, it doesn't, your answer doesn't seem like it's a real world answer. Your Honor, the difference would be that in this case, the amount of tender necessary, Ms. Lavis may not have been able to obtain without this first security interest being released. And courts routinely find that the appropriate, including this court in Shelton, the appropriate or best practice when tender is required is to provide a period of time after the lien is released in order for a borrower to be able to tender. So, counsel, let me follow up on, I appreciate your reading of the statute kind of first sentence by second sentence, and I might disagree that it's completely clear because there's some things that aren't specified. For example, it doesn't say specifically what happens if the 20-day, if the creditor doesn't fulfill within 20 days. I appreciate your argument about how you interpret that. But that argument's kind of a mechanical, go step one, step two, sort of what, sort of way of looking at it. If that's the way it works, that mechanically, the last sentence of B seems to be kind of weird or out of place because it says, here's a step, but the court can alter this if it wants to. So, does it, that, does that last sentence undermine the kind of way you're reading the statute that, all right, it's over 20 days, you didn't sue, you didn't release your security interest, you're out of luck, period. It just seems like within that last sentence, it doesn't make sense if it's that mechanical. Your Honor, if the creditor does not want or wants to protect its interest by not following the step-by-step within 20 days, it has the duty to look to the court to provide alternative procedures. I think the best practice would be to do that within 20 days. I agree that it's not, there's not a separate statute of limitations. Courts have routinely found, the Ninth Circuit in the Patolo case in 2015 that followed Jesenowski, said that upon receiving that notice, lenders do continue to have options. They can begin the process of releasing its obligation or it can seek the judicial, seek judicial intervention. In this case, because RMS failed to act completely within 20 days or at all, there was another matter where the court in the Ironata case in the Seventh Circuit, the defendant moved the court in response to summary judgment to set reasonable rescission procedures under 1635B, did so well beyond the 20 days, but the court in that case still then ordered. Aren't they kind of doing it in, I mean, you, you, your client has initiated the action, you know, counts seven and eight are both for rescission and they're, you know, in this suit at least, doing something similar to what was done in the Seventh Circuit case. Is that not right? I mean, they're raising the issue, seeking the court's involvement on requiring intervention in response to your claim. How is, what's different about those? RMS has failed to so directly invoke the court in that way, Your Honor, in this case. All they did was affirmatively, plead as affirmative defenses, set off and recoupment, and of course, there were no monetary damages to Ms. Leavis to be offset or recouped. RMS took no other action to involve the courts specific to set out alternative procedures. So, um, I, I, and, and, and that may help me out and you know the record better than me, and obviously, and that they, I thought they sought to introduce into evidence, information or evidence about inability to tender and the district court excluded that. That's right. So, how is that not, maybe there's not a counterclaim and maybe there's, maybe that's your point. You, you don't get to do it unless you assert an actual claim or actual, you know, affirmative defense. But it, it seems like it was raised in some fashion, maybe in your mind, not formally enough. RMS always, Your Honor, sought tender but sought it as a part of what it saw Ms. Leavis' affirmative burdens to prove in order to receive rescission. And that's clearly counter to the statute as well as to the law in Jesenowski. Therefore, it did not do enough to retain its rights to tender. Thank you very much. Mr. Manning, you've got some time left in rebuttal. Thank you, Your Honor. I just wanted to address, Judge Richardson, you were asking in the record where I found an example. It's joint appendix page 2503 and 2504 regarding the inability, not lack of desire, not lack of effort, the inability to pay $56 a month. I think what we're dealing with is $57,000. I wanted to touch briefly on the failure to honor rescission because I understand that was raised. There's a separate statutory penalty for that issue. Obviously, it's moot because there's, it's a monetary claim and the bankruptcy bars it. But there's also a case law that says that ruling should be reversed because there isn't a failure to honor rescission if there's inability to tender. And the case for that is from the Southern District of West Virginia, Lenhart v. Bank of America, also cited in our brief. And it's just an example. I'm not sure I understand what you're saying. This is an issue that's mooted by the bankruptcy court's order? Because there was a third ground for appeal that we were seeking to 1635G. And although there can be no monetary relief, that ruling should also be reversed because, again, it's contingent on a finding that there's ability to tender. There can be no failure to honor rescission if the borrower hasn't proven her affirmative pleading duty of ability to tender. And then the other point I wanted to identify was when your honors are interpreting the statute, and it is either confusing or ambiguous, it can't be read to work a profound injustice. And what we're talking about here is stripping liens. We're stripping mortgages because of a failure to respond to a notice that was sent by an attorney and said, don't talk to this person. He's representing the borrower. And there's no statement of intent or ability to rescind, meaning tender the proceeds. They don't even ask for rescission in the notice. So if we're going to talk about the notice being some kind of formulaic requirement that triggers an obligation of a creditor to step in and do something, there should be a requirement as to what has to be in that notice. Otherwise, it's a game of gotcha. We're talking about something that is removing an undisputed lien. And in this case, an FHA HUD-insured lien. And it can't just go away into the ether because there's not a response. Instead, the courts have routinely and consistently held. I hear opposing counsel to say that the statute is clear that once the letter goes out, we'll assume it's effective to show a right to rescind, that that does void the security interest as a matter of law. And I disagree with that interpretation. But let me just, again, for hypothetical sake, let's say that she's right. It cannot be read that that is an unconditional voiding. It's not effectuated until there's actually a tender. And that's where the court, the statement in 1635b comes in where the court can exercise an ordering of what these steps, the order the steps take place in. Okay, it's deemed void as long as you can pay tender. But if you can't pay tender, it is not an effectuated voiding of a lien. You can't just strip a lien because of a notice. You have to, the whole intent of this is to put the parties back in the status quo ante. That wasn't done here. The record is clear she couldn't do it here. She never said she was going to do it. And despite the court repeatedly holding it was going to be required after the jury came back in favor of Varmus, it was a complete about face. And it's contrary to the overwhelming body of law that says you must prove ability to tender as a pleading. You must prove it to avoid summary judgment as a matter of law. And then at the unless you actually pay the proceeds that are owed. So you said a second ago, and I don't remember this from my review, that notice that came from Ms. Lavis, and I've been saying Ms. Lavis, so I apologize if I mispronounced that earlier, but didn't mention anything about rescission. But I thought that in May of 16, the letter to your client did say they were rescinding the loan. Are you saying that the letter, there was never a letter putting you on notice of the claim of rescission? May 12, 2016. You're right. Lavis sent a letter directly to RMS purporting to rescind the loan. Okay. I thought you just said a second ago that the notice didn't say anything about rescission. I meant to say about tender. So if I said that, I apologize. Okay. I've got my note here, and I'll continue just for clarity. It wasn't served on RMS. It was mailed, so not affected process of service. And it does not mention any reason for rescission and does not offer to tender. Okay. So in the words of part of the Genachowski opinion, did that effectuate her right to rescind? And it preserved her right to sue on it if we didn't respond. You shook your head. Was that a yes to the question? Yes. Yes, Your Honor. If there's no further questions, Your Honor, I will just respectfully request that this court reverse and enter judgment in favor of the appellant, RMS. Thank you. All right. Thank you very much. We appreciate the argument of both counsel. We're still observing various COVID protocols, which include not coming down to Greek counsel in person, which is what we would prefer to do, and we're still observing various COVID protocols. It is our historical practice, so we'll simply give you a nod from the bench and thank you again for your arguments. Hope you will return in the future when all this is gone.
judges: G. Steven Agee, Julius N. Richardson, A. Marvin Quattlebaum Jr.